## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Dec 29 2015, 7:47 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

James T. Knight
Andrew A. Achey
Hillis, Hillis, Rozzi & Achey
Logansport, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Abigail R. Recker
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of:

W.M. (Minor Child),

and

T.O. (Mother)

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

December 29, 2015

Court of Appeals Case No. 25A03-1503-JT-78

Appeal from the Fulton Circuit Court

The Honorable A. Christopher Lee, Judge

Trial Court Cause No. 25C01-1406-JT-100

**Bailey, Judge.**

# Case Summary

T.O. ("Mother") appeals the termination of her parental rights to W.M. ("Child"), upon the petition of the Fulton County Department of Child Services ("the DCS"). She presents the sole issue of whether the trial court clearly erred in terminating her parental rights because her release from incarceration was imminent. We affirm.

# Facts and Procedural History

Child was born in July of 2007 to Mother and B.M. ("Father"). On July 12, 2013, DCS caseworkers and law enforcement visited the residence of Mother, Father, and Child. Police officers discovered an active methamphetamine lab and twenty-five weapons. Mother refused a drug screen. She was arrested and Child was taken into DCS custody. Father was already in the Fulton County Jail.

Subsequently, Mother and Father admitted that Child was a Child in Need of Services. Both parents were ordered to participate in services. However, Father remained incarcerated and did not participate. Mother participated in some services, albeit sporadically. She was arrested on separate drug-related charges in November of 2013. She tested positive for methamphetamine on nine occasions and refused several other drug screens. She entered an in-patient treatment program but, after four days, left against medical advice. She was

removed from an outpatient treatment program after she tested positive for methamphetamine. On July 18, 2014, her supervised visits with Child were terminated.

[4] On June 25, 2014, the DCS petitioned to terminate the parental rights of Mother and Father. On October 1, 2014 and on November 25, 2014, fact-finding hearings were conducted. Father, who remained incarcerated, telephonically testified that he agreed to the DCS plan of adoption of Child by his paternal grandmother. Mother, who was also then incarcerated, testified that she wanted the opportunity to parent Child after her anticipated release from incarceration in April of 2015.

[5] On February 5, 2015, the trial court entered its findings of fact, conclusions, and order terminating the parental rights of Father and Mother. Mother now appeals.[1]

# Discussion and Decision

## Standard of Review

[6] Our standard of review is highly deferential in cases concerning the termination of parental rights. *In re K.S.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). This Court will not set aside the trial court's judgment terminating a parent-child relationship unless it is clearly erroneous. *In re A.A.C.*, 682 N.E.2d 542, 544

---

[1] Father is not an active party to this appeal.

(Ind. Ct. App. 1997). We neither reweigh the evidence nor judge the credibility of the witnesses and consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. *Id.*

## Requirements for Involuntary Termination of Parental Rights

Parental rights are of a constitutional dimension, but the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the parents, but to protect their children. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

Indiana Code section 31-35-2-4(b)(2) sets out the elements that the DCS must allege and prove by clear and convincing evidence in order to terminate a parent-child relationship:

> (A) that one (1) of the following is true:
>
> (i)     The child has been removed from the parent for at least six (6) months under a dispositional decree.
> (ii)    A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
> (iii)   The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the

home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

If the court finds that the allegations in a petition described above are true, the court shall terminate the parent-child relationship. I.C. § 31-35-2-8(a). A trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. The trial court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Id.*

## Analysis

The trial court found that Mother was charged with drug-related offenses in July of 2013 and again in November of 2013; she had submitted nine drug

screens that tested positive for amphetamine or methamphetamine; on numerous occasions, she failed to comply with drug testing protocol; she left inpatient treatment against medical advice; she was discharged from outpatient treatment for failure to maintain sobriety; she failed to successfully complete other programs or services; several parental visits were cancelled due to Mother's impairment; and Child was thriving in the pre-adoptive home of his paternal grandmother.

[11] Mother does not allege that the trial court's findings lack evidentiary support, nor does she challenge the trial court's legal conclusions. Rather, Mother argues error in that "the trial court neglected to consider Mother's release date when it issued a decision terminating her parental rights." (Appellant's Br. at 3.) Mother directs our attention to the language of *H.G. v. Ind. Dep't of Child Servs.*, 959 N.E.2d 272, 291 (Ind. Ct. App. 2011): "the court is not prohibited from considering the possibility of a parent's early release, nor should it disregard a parent's voluntary efforts while in prison." Beyond this, Mother does not develop an argument such that we could find error in the trial court's decision.

[12] Nevertheless, it is apparent that the trial court did not ignore the testimony that Mother had been offered a plea agreement for six months executed time and two and one-half years' probation, which meant that she expected to be released from incarceration in April of 2015. Indeed, the trial court made the following factual finding:

As a result of the events leading to removal of the Child on July 12, 2013, Mother was charged in cause number 25C01-1307-FB-463 with: Ct. 1 Dealing in Methamphetamine, Ct. II Possession of Methamphetamine; Ct. III Illegal Drug Lab, Ct. IV Neglect of a Dependent. Mother entered a plea of guilty to Possession of Methamphetamine in the cause and was awaiting sentencing at the point of the termination hearing. The plea agreement "capped" any executed time at six months and called for 25C01-1307-FB-463 and 25C01-1311-FD-708 to run consecutively.

On November 20, 2013, Mother was arrested again and charged in cause number 25C01-1311-FD-708 with Ct. I Possession of Methamphetamine; Ct. II Possession of Marijuana with a Prior Conviction; and Ct. III Possession of a Controlled Substance. Mother entered a plea of guilty to Possession of Methamphetamine in the cause and was awaiting sentencing at the point of the termination hearing. The plea agreement "capped" any executed time at six months and called for 25C01-1307-FB-463 and 25C01-1311-FD-708 to run consecutively.

(App. at 8-9.) It appears that Mother is actually asking that this court reweigh the evidence and accord greater weight to the testimony of her wishes and future aspirations to effectively parent. This we cannot do. *In re A.A.C.*, 682 N.E.2d at 544.

# Conclusion

Mother has not shown clear error in the termination decision.

Affirmed.

Vaidik, C.J., and Crone, J., concur.